## Case No. 13,880.

### The THEODORE PERRY.

[24 Int. Rev. Rec. 54.]

District Court, E. D. Michigan. 1878.

SEAMEN—WAGES—SHIPPING ARTICLES—DESERTION.

Shipping articles signed after the vessel has left her port of departure are not binding upon the seaman, and he may leave the vessel at any time without incurring the penalties of desertion.

Libellant shipped on board the Theodore Perry for a voyage from Detroit to Ossineke, Mich., thence to Tonawanda, N. Y., and back to Detroit. Shipping articles were signed in St. Clair river, the day after the departure of the schooner on her trip to Ossineke. On her way from Ossineke to Tonawanda she stopped at Detroit for repairs, when libellant left the vessel and commenced this suit for wages. It seems that libellant contracted a cold and rheumatism while on board the vessel, but he did not allege this as an excuse for leaving.

J. W. Finney, for libellant.
F. H. Canfield, for claimant.

BROWN, District Judge. This case turns upon the validity of the shipping articles signed by libellant the day after the vessel left Detroit. Rev. St. § 4520, requires "every master of any vessel of the burthen of 50 tons or upward, bound from a port in one state to a port in any other than an adjoining state, * * * before he proceeds on such voyage to make an agreement in writing or in print with every seaman," etc. Section 4521 provides that "if any master * * * shall carry out any seaman or mariner * * * without such contract or agreement being first made and signed by the seaman, such master shall pay to every such seaman the highest price or wages which shall have been given at the port or place where such seaman was shipped, for a similar voyage, within three months next before the time of such shipping," and shall also incur a penalty. Section 4523 pronounces all shipments of seamen made contrary to the provisions of any act of congress void. "And any seaman so shipped may leave the service at any time, and shall be entitled to recover the highest rate of wages at the port from which the seaman was shipped, or the sum agreed to be given him at his shipment." That the provisions of the law requiring shipping articles applies to lake navigation, was held, doubtless correctly, in Wolverton v. Lacey [Case No. 17,932]. Such, too, has been the practical construction of the law by the shipmasters themselves. It is insisted, however, by the claimant, that conceding the shipping articles should be signed before leaving port, the parties waive this requirement by afterward signing them; and that they become obligatory upon the seamen from this time. There is no room for such construction. The statute is explicit. The articles must be signed before leaving the port of departure, and if not so signed the shipment is void by the express language of section 4523. The object of requiring shipping articles is, primarily, to prevent imposition upon seamen, and disputes between them and the master. Indeed, title 53 of the Revised Statutes is filled with provisions designed to protect the seaman against the master, and even against himself; and courts in the construction of shipping articles lean constantly in favor of the seaman. "The courts interfere to protect seamen against loose and indefinite language or unfair or new and unusual stipulations; and wherever there is a doubt as to their meaning or obligation, the seaman has the benefit of the doubt." 2 Pars. Shipp. 35. Courts of admiralty do not allow force to any clauses lessening the right of seamen to their wages; "nor do they give any effect to the receipt of a sailor for his wages, whether sealed or parol, unless there was an actual payment of them." 2 Pars. Shipp. 40, 41. The well established rule of common law, viz.: That a written instrument cannot be varied by parol has been abrogated with regard to seamen (The Cypress [Case No. 3,530]), though remaining in full force as against the ship owner (The Triton [Id. 14,181]; The Exchange [Id. 4,594]). Under the English statutes the seaman may prove the contents of the shipping articles without producing, or giving notice to produce them, and any erasure or alteration therein not proved to have been made with the consent of all parties and before a public officer, is wholly inoperative. Macl. Shipp. 202. If the articles are signed under duress they are invalid. Mayshew v. Terry [Case No. 9,361]; Stratton v. Babbage [Id. 13,527]; 2 Pars. Shipp. 36. The tenor of these provisions and rulings exhibits the extreme jealousy with which the rights of seamen are guarded by the legisla-

tures and the courts. Congress has recently added other restrictions upon the shipment of seamen upon sea-going vessels, by providing that the articles shall be signed in every case before a shipping commissioner. To authorize a master to withhold the signing of the articles until the vessel has put to sea would enable him to impose upon the seaman as great a duress as if his signature were coerced by actual physical violence. From the time the vessel breaks ground the seaman is absolutely at the disposal of the master, and no redress can be had against him until the arrival of the vessel at the next port. If, for instance, the master of a transatlantic vessel may postpone signing the articles until after the vessel has passed Sandy Hook, he may, with equal reason, defer it until she has reached the English channel, and thus defeat the whole purpose of the statute. To permit the master, under these circumstances, to show that the articles were signed voluntarily and understandingly, and without undue influence, would be putting in his hands a weapon against which the sailor would be powerless to defend himself. Whenever a seaman is shipped, he is entitled to know at once the terms of his engagement, that he may exercise his option of leaving the vessel before she weighs anchor. While there is not the slightest imputation upon the master in this case, and while it frequently happens upon the lakes that the articles are not signed until after the vessel has left the port of departure, I feel compelled to hold that articles so signed have no binding effect upon the seaman. Whether they are not obligatory upon the master it is unnecessary here to determine. See Macl. Shipp. 203. The fact that at the time the articles were signed the vessel was bound, primarily, to a port in the same state, is of no consequence; the voyage was entire—to Ossineke, Tonawanda, and back, and that voyage had been commenced.

There must be a decree for libellant for the rate of wages agreed to be given him at the time of the shipment; but as he recovers upon a mere technicality, and his conduct in leaving was such as to amount to desertion if the articles had been duly executed; and as the master seems to have acted fairly, I think costs should not be given with the decree. It is true that libellant was sick with a cold and with rheumatism at the time he abandoned the vessel, but, conceding that sickness was a sufficient excuse for leaving, of which there may be some doubt, he did not claim the right to leave on that account, but abandoned the vessel suddenly and without assigning a reason, or even demanding his wages.