## The Lud Keefer.

### Werling et al. v. The Lud Keefer.

*(District Court, W. D. Pennsylvania.  February 8, 1892.)*

1. **Seamen—Contract for Wages—River Pilots.**
Where a steam-boat bound from Pittsburgh, Pa., to Louisville, Ky., engages pilots without the written contract required by Rev. St. U. S. § 4520, she is liable, under section 4521, for the highest wages shown to have been voluntarily paid at Pittsburgh to any pilot for a similar voyage during the three months preceding.

2. **Same—Statutory Provisions—Equities.**
The purpose of the statute is to prevent disputes as to the agreement for wages, and its positive provisions in favor of the seamen cannot be affected by any equities in the case.

In Admiralty.  Libel by Werling and Reno against the steam-boat Lud Keefer for wages as pilots.  Decree for complainants.

*M. A. Woodward*, for libelants.

*George C. Wilson* and *David S. McCann*, for claimant.

Reed, District Judge.  The testimony establishes the fact that when the boat started upon her voyage, after making up her tow at Economy, her destination was Louisville.  She was to leave her tow at Cincinnati, go to Louisville, and bring back a tow of empty barges to Pittsburgh. The only change that occurred was that in pursuance of a telegram from Jutte & Co., the owners of the tow, she took her tow of loaded barges with her to Louisville, instead of leaving it at Cincinnati.  Her destination being a port in another than an adjoining state, the act of congress applies.  Section 4520 of the Revised Statutes provides that a written or printed agreement shall be made by the master with every seaman on board, and section 4521 provides that in the absence of such a contract the master shall pay every such seaman "the highest price or wages which shall have been given at the port or place where such seaman was shipped, for a similar voyage, within three months next before the time of such shipping, if such seaman shall perform such voyage."  No written or printed agreement was made with either of the libelants.  Capt. Reno testifies, without contradiction, that he was to be paid the highest wages that would be paid on each trip, which is substantially what the act provides.  No arrangement was made with Capt. Werling as to wages. It follows, therefore, that under the provisions of the statutes referred to the libelants are entitled to receive the highest wages paid at the port of departure for similar voyages.  The testimony shows that $250 was paid to one pilot for a similar voyage at the same time from Pittsburgh to Louisville and return.  In another case $200 was paid to a pilot for a voyage to Louisville, where he left the boat and returned by rail to Pittsburgh, his expenses back being paid by his employers.  The libelants, on the contrary, performed the additional service of piloting the boat back to Pittsburgh.  These rates seem to have been paid without compulsion, and, while higher than the wages paid to other pilots at the time, were

paid in pursuance of agreement, and apparently because the employers desired the services of those particular pilots for reasons satisfactory to themselves. It is the duty of the court, therefore, to allow the libelants this rate of wages, and the libelants are each entitled to receive the sum of $250, as claimed in their libel, with costs to be paid by the respondent.

Something was said about the equities of the case by the proctors for respondent, but equities cannot affect the positive provision of the statute, the benefits of which the libelants are entitled to claim. The intention, however, of the statute, seems to be to make it to the interest of the owner of the boat to make a written or printed agreement with the seamen, in order partly to avoid just such disputes as the present one. As is said by Judge TREAT in *Rollins* v. *The Standard*, 4 Fed. Rep. 750:

"Mariners are wards of the court, and as such are to be protected, not to the injury of the respondents, but to secure them their just wages. It is very easy for officers of vessels to engage mariners at a fixed rate, and if they do not do so the courts must allow them the highest rates existing at the time of departure."

Therefore, there do not seem to be any equities in favor of the respondent. A decree will be made accordingly.