WEAVER et al. v. PITTSBURGH STEAM-SHIP CO.

No. 10074.

Circuit Court of Appeals, Sixth Circuit.

Feb. 4, 1946.

Stephen A. Mack, of Toledo, Ohio (Edward Lamb, of Toledo, Ohio, on the brief), for appellants.

A. F. Bunge, of Toledo, Ohio, and Carl A. Schipfer, of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and George William Cottrell, of Cleveland, Ohio, and Marshall, Melhorn, Wall & Bloch, of Toledo, Ohio, on the brief), for appellee.

Joseph Stone, of Washington, D. C. (William S. Tyson and Bessie Margolin, both of Washington, D. C., Charles A.

Reynard, of Cleveland, Ohio, and David O. Walter and Joseph M. Stone, both of Washington, D. C., on the brief), amicus curiae.

Before ALLEN and MARTIN, Circuit Judges, and PICARD, District Judge.

MARTIN, Circuit Judge.

Both contending counsel and the district judge have indulged in much argument as to whether an employee, engaged in "fitting out" a vessel for use in interstate commerce during the navigation season and in the "laying up" of the vessel at the conclusion of seasonal navigation on the Great Lakes, is engaged "in commerce" or in the "production of goods for commerce" within the meaning of Section 7 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 207. While the opinion writer is especially tempted to accept the invitation to discuss this interesting question, inasmuch as his opinion as district judge in Wood v. Central Sand & Gravel Co., decided May 3, 1940, D.C., 33 F.Supp. 40, was an early exposition of the underlying principles involved and has been cited by some 25 state and federal courts [Shepard's Federal Reporter Citations, Vol. XXXV, No. 3, July 1945], decision of the instant case, as we view it, rests upon a surer and simpler ground foreclosing necessity for further contribution to the more controversial issue. Indeed, as the Supreme Court has declared, judicial determination of the reach of the coverage of the Fair Labor Standards Act "in commerce" must deal with doubtful instances; and there is no single concept which can be applied to every federal statute regulating interstate commerce. McLeod v. Threlkeld, 319 U.S. 491, 495, 63 S.Ct. 1248, 87 L.Ed. 1538.

If the employee, in doing the work here in question, was at the time a seaman, within the meaning of Section 13(a) (3) of the Fair Labor Standards Act, he is expressly exempted from its coverage,[1] and the issue as to whether he was engaged in commerce or in the production of goods for commerce is immaterial. The singular word, "employee," has been used advisedly, for the reason that, of the numerous plaintiffs and intervenors in this action, proof was introduced concerning the service of Frank Rymarkiewicz alone. The civil actions filed in the District Court in behalf of the plaintiff employees were for claimed overtime compensation, liquidated damages and attorneys' fees, alleged to be due under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The causes of two of the plaintiffs were continued for the duration of the war on account of their military service, and the causes of Harold Lee Weaver and eleven other plaintiffs were dismissed for their failure to appear or to offer any evidence in support of the allegations of their complaints. From the record it would seem, however, that no plaintiff whose case was dismissed could have presented, in behalf of his claimed coverage by the Fair Labor Standards Act, a stronger case on the facts than was proffered by Rymarkiewicz.

The ensuing narrative is based upon findings of fact of the District Court, abundantly supported by substantial evidence. The appellant, Rymarkiewicz, has been a seaman on the Great Lakes since 1926. He was the holder of a certificate of service in a "continuous discharge book" issued by the United States to seamen on those waters. However, he has not sailed every season since 1926, but was employed and served as a fireman on steamships owned by the appellee company during the consecutive seasons of 1941, 1942 and 1943, involved here. His service was continuous on a different ship during each of the three seasons and commenced in each instance aboard ship at the beginning of the "fit-out" period in late winter or early spring, and continued through the sailing period and the "lay-up" period, ending in late fall or early winter of each year.

When he first came aboard each season at the commencement of the fit-out period, he signed Articles of Agreement and continued to work thereunder until the lay-up work was completed. The pertinent provisions of these Articles are found in the following paragraph: "Each person signing these articles before the vessel goes into commission or leaves port, agrees that

---

[1] "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator); or (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; or (3) *any employee employed as a seaman;* * * *." [Italics supplied.] U.S.C.A., Title 29, § 213(a) (1) (2) (3).

he will perform the duties assigned to him as a member of the crew in the capacity set opposite his name in preparing the vessel to go into commission or leave port, as well as during any voyage of said vessel during the term above mentioned. Each person being a member of the crew when the vessel goes out of commission or lays up, and each person signing these articles while the vessel is being prepared for a non-sailing or lay-up period, agrees to perform the duties assigned to him as a member of the crew in the capacity set opposite his name, and upon the completion of said duties so assigned to him, the contract of employment hereunder shall cease. Provided, always, that the master shall have the right to discharge any of the undersigned for misconduct, incompetency, insobriety, or inattention to duty, in which event no transportation shall be allowed or wages paid after discharge."

In his capacity of fireman, his duties were confined to the boiler room, both during the sailing season and during the fit-out and lay-up periods. During all these periods, until his discharge at the end of the lay-up period, he worked, ate and slept aboard ship. But when the ship was in port and he was off duty he was permitted to go ashore and, if in his home port, he was privileged to go home. As fireman, he performed various duties, such as starting fires in the boilers, keeping them going and "pulling" them, repairing grates, pipes and gaskets, scraping rust, painting, cleaning, "sooging," and turbining tubes. The work which he was required to do during the fit-out and lay-up periods demanded the services of one familiar with Great Lakes practices and with the job of a fireman on lake steamships.

During the sailing season and during the fit-out and lay-up period, Rymarkiewicz was subject to the discipline, orders and directions of the chief engineer of the vessel on which he was employed. When he signed the Articles at the beginning of the fit-out season he signed as a seaman and member of the crew in the capacity of fireman, and remained as such throughout the sailing season and until the lay-up was completed. He received the same rate of pay, in the same manner, from the time he signed the Articles at the beginning of the fit-out period until he was discharged at the end of the lay-up period. He received a bonus for continuous employment from the beginning of the fit-out period un-til the end of the lay-up period. He was furnished transportation from his home to his ship when reporting, and from his ship to his home at the end of the lay-up period. It is the custom on the Great Lakes for the seamen who sail the ships to fit them out and lay them up; and, while this work is being done, the ships are either anchored securely or tied to the dock.

On a special repair job on one of the ships of the appellee company, Rymarkiewicz was employed as a laborer from February 1, 1943, to March 13, 1943. During this particular period, he was not working under Articles. He worked only eight hours per day, five days a week, and for not more than forty hours in any work week. For this work, he was paid at the rate of ninety-three cents per hour. Were the Fair Labor Standards Act applicable to this particular six weeks' work done by Rymarkiewicz, there was actual compliance with the requirements of the Act during such time.

On the findings of fact which have been narrated, the District Court held that, as a matter of fact, the appellant, Rymarkiewicz, was a seaman "within the meaning of that term as used in Section 13(a) (3)" of the Fair Labor Standards Act; that, this being true, Sections 6 and 7 of that Act do not, as a matter of law, apply to him; and that he is exempt from the coverage of the Act. Accordingly it was held that he is not entitled to recovery on his claim for overtime compensation, liquidated damages and attorneys' fees. Upon this basis, we consider the judgment of the District Court correct.

■ The Fair Labor Standards Act expressly declares that provisions of Sections 6 and 7 shall not apply with respect to "any employee employed as a seaman." The legislative history of the Act indicates a plain intention to exclude seamen from the operation of the Act. Labor organizations of seamen appeared through their representatives before the Congressional Committees considering the proposed legislation. They pointed to the beneficial laws already enacted for the protection of the rights of seamen, and urged that division of jurisdiction and confusion in labor relations be avoided by excluding seamen from the operation of the provisions of the bill. See Joint Hearings before Labor Committees, 75th Cong. 1st Sess., on S. 2475, introduced in the Senate May 24, 1937, by Senator (now Mr. Justice) Black and H. R.

7200, introduced in the House of Representatives on the same date by Congressman Connery, Part 3, pp. 1216-1217. On the floor of the Senate it was explained by Senator Black that, with respect to exemptions, it had been the policy of the Committee to write the bill so as not to conflict with the regulations of hours and wages when given to other governmental agencies, and that such action had been taken "with reference to maritime workmen." Congressional Record, Vol. 81, p. 7875. During the committee hearings, Congressman Connery took the position that there should be no conflict of jurisdiction affecting seamen and expressed his opinion that the bills did not cover them. Joint Hearings, Part 2, p. 549. The Reports of the House Committee on Education and Labor, the declarations made by its Chairman on the floor of the House, and the final report of the Conference Committee, indicate plainly that it was the intention of Congress to exclude seamen from the operation of the Fair Labor Standards Act. See Report from the Committee on Labor to accompany S. 2475, House of Representatives, 75th Congress, 3rd Session, Report No. 2182; Cong. Rec. Vol. 83, No. 105, p. 9584; Cong. Rec. Vol. 83, No. 106, p. 9788; Cong. Rec. Vol. 83, No. 121, p. 11814; Cong. Rec. Vol. 83, No. 122, p. 12030.

█ Statutes have been enacted by Congress (U.S.C.A. Title 46, Ch. 18) concerning Merchant Seamen and relating to shipping commissioners; shipment of crews; wages, protection, release, and discharge of seamen; disposition of their effects; wages on canal boats; and offenses and punishments. Section 713 of the Chapter on Merchant Seamen provides that "every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same [vessel] shall be deemed and taken to be a 'seaman.'" By Section 574 of the Chapter on Merchant Seamen, every master of any vessel of the character of those of the appellee engaged in coastwide trade is directed, before proceeding on a voyage, to "make an agreement in writing or in print, with every seaman on board such vessel except such as shall be apprentice or servant to himself or owners, declaring the voyage or term of time for which such seaman shall be shipped." Section 575 prescribes penalties for shipping without Articles. There is no doubt as to the applicability of these statutes to shipping on the Great Lakes.

█ It has been held that the service of each sailor on a merchant vessel begins with the signing of the shipping Articles. Tucker v. Alexandroff, 183 U.S. 424, 444, 22 S.Ct. 195, 46 L.Ed. 264; The Ida G. Farren, D.C., 127 F. 766. As has been pointed out, Rymarkiewicz was working under such signed Articles.

█ The Public Health Service Act of March 3, 1875, as amended, defines the term "seaman" to include any person employed on board in the care, preservation, or navigation of any vessel, or in the service, on board, of those engaged in such care, preservation, or navigation. U.S.C.A. Title 42, Section 201(h). See also U.S.C.A. Title 42, Section 249(a) (1); U.S.C.A. Title 42, § 1; U.S.C.A., Title 24, § 1, 18 Stat. 485. Section 2 of the Seaman's Act of March 4, 1915, as amended June 25, 1936, June 23, 1938, regulates the hours of work of seamen, both while the vessel is in port and while it is at sea. Title 46 U.S.C.A. § 673.

It has been held that seamen, employed to serve on a ship which is intended for coastal voyages, have a lien for their wages, on the ship, while it is being repaired and maintained during the lay-up period. The Island City, D.C., 13 Fed.Cas. page 172, No. 7,109. Compare The Eastern Shore, 31 F.Supp. 964. A member of a crew was held not to be an "employee" within the meaning of the Longshoremen's Compensation Act, 33 U.S.C.A. § 901 et seq., where prior to the time the boat "laid up" he was a member of the crew and returned to it to load coal preparatory to the further use of the boat in the same kind of business. Though no specific mention had been made that he would be a member of the crew when he returned, the court considered it a reasonable inference that he immediately became such, in the same capacity, at the same rate of pay, and in the performance of the same sort of duties which he had previously performed. Jones v. Shepherd, D.C., 20 F.Supp. 345. In Hunt v. United States, 17 F.Supp. 578 [affirmed 91 F.2d 1014; certiorari denied 302 U.S. 752, 58 S.Ct. 271, 82 L.Ed. 581], a man, who signed no ship's Articles but took his chances of being selected when such Articles were signed for the next voyage of the vessel, was hired to work on board, at the regular wages of a seaman, while the ship

was in dry dock. He slept and ate on the ship and was subject to the discipline, orders and directions of the master and the chief officer. While painting over rust spots in the hold of the vessel, he was injured. It was held that he was a member of the crew entitled, as a "seaman," to maintain an action under the Jones Act, 46 U.S.C.A. § 688, for his injuries.

United States v. Lindgren, 4 Cir., 28 F.2d 725, 728, [affirmed on appeal, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686], has bearing here. We quote the following salient language from the opinion of Judge Parker: "The point is made that the Merchant Marine Act has no application, because it is said that decedent was not a seaman, but a mere shipkeeper of a ship out of commission. * * * The Hybert had been laid up, it is true, but some time prior to the death of decedent she had been taken to the dry dock and was undergoing repairs preparatory to a voyage. Decedent was employed as third officer and came on duty for the first time on the morning of his death. At the time he received the fatal injury he was engaged in preparing the vessel for sea. * * * Certainly seamen employed to take a ship to sea who are engaged in making her ready for the voyage are not to be denied the status of seamen and the benefit of the act merely because the vessel is not commissioned at the time."

Cases cited by appellant do not seem apposite. In Gonzales v. United States Shipping Board Emergency Fleet Corporation, D.C., 3 F.2d 168, employees injured while working on permanently laid-up vessels (the "dead ships" scrapped after World War I) were held not to be entitled to maintain actions as "seamen" under the Merchant Marine Act, 46 U.S.C.A. § 861 et seq.

Helena Glendale Ferry Co. v. Walling, Administrator of Wage and Hour Division, United States Department of Labor, 8 Cir., 132 F.2d 616, is far afield from the case at bar. There, all employees of a ferry company engaged in interstate commerce were conceded to be exempt seamen under the provisions of the Fair Labor Standards Act except three persons, two of whom were female clerical workers in an office on a floating barge which was used as a landing dock and the third of whom was a male farm worker in the employ of the principal owner and general manager of the ferry company who operated a cotton plantation. These three employees were, of course, held not to be seamen. The holding in Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991, seems to boil down to the proposition that a person employed during the sailing season as a seaman on a vessel, in the capacity of oiler, remained a seaman while performing similar duties when the ship was laid up.

Two opinions of this court are stressed by appellant: Taylor v. McMaugal, 6 Cir., 89 F.2d 583, and Antus v. Interocean S. S. Co., 6 Cir., 108 F.2d 185, 187. In neither of these cases were the employees working under Articles, as was Rymarkiewicz in the case at bar, nor does it appear that the men lived aboard the vessels. Rymarkiewicz worked, ate and slept aboard the ship. In neither the Taylor case nor the Antus case was there a showing that the employes were subject to discipline as seamen or members of the crew, while Rymarkiewicz was subject to the same discipline as he was during the sailing season. During the lay-up and fit-out periods, Rymarkiewicz, upon coming aboard, performed his duties as seaman in the capacity of fireman and was doing maritime work, while in the two cited cases, the employees were doing other types of work and had not assumed duties as members of the crew. In the Taylor case, the deceased was killed while working as a mechanic, not having assumed the duties of assistant engineer. In the Antus case, it was said that "the fact that he had been, or expected in the future to be, a seaman does not render maritime work which was not maritime in its nature." In the Taylor case, the decedent had not been hired as a member of the crew in any capacity at the time of his death; and, in the Antus case, the crew had been paid off after their last voyage and Antus was engaged thereafter in laying-up work on an hourly basis, the rate of compensation, however, being the same. Rymarkiewicz was hired as a fireman and member of the crew, came aboard at the beginning of the fit-out season, and continued to work in the capacity of fireman throughout the sailing season and until the end of the lay-up period.

In none of the other cases cited by either the appellant, or the Administrator of the Wage and Hour Division of the Department of Labor, who filed a brief as amicus curiae, do we find any authority which gainsays our conclusion that the appellant,

602

Rymarkiewicz, during the period of time involved in this litigation, was performing the duties of a seaman under Articles in such manner as to be properly classified as such, and so expressly exempt from the coverage of the Fair Labor Standards Act.

The judgment of the District Court is affirmed.