Vincent **SYLVIS**, Plaintiff–Appellant,

v.

**ROUGE STEEL COMPANY, A SUBSIDIARY OF FORD MOTOR COMPANY,** Defendant–Appellee.

No. 88–1471.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 21, 1989.

Decided April 24, 1989.

D. Michael O'Bryan (argued), Birmingham, Mich., for plaintiff-appellant.

Paul D. Galea (argued), Detroit, Mich., for defendant-appellee.

Before KEITH, JONES and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Vincent Sylvis, appeals from the district court's grant of summary judgment for defendant Rouge Steel Company in this admiralty action for penalty damages. The action stems from the Rouge Steel Company's alleged violation of 46 U.S.C. § 574 and its successor, 46 U.S.C. § 10502, which require the execution of a written agreement between shipmasters and seamen prior to embarking on a voyage. Although we depart from its analysis, we affirm the district court's ruling.

The Rouge Steel Company (Company) is a shipping company whose vessels sail exclusively on the Great Lakes and its tributaries. Sylvis is a seaman who has served on the Company's vessels in the engine and deck departments since 1977. Sylvis is a member of the National Maritime Union (Union), a party to a collective bargaining agreement with the Company. The agreement, which is negotiated periodically, extensively covers terms and conditions of employment including wages and grievance procedures. The agreement is necessarily broad and does not specify the nature or schedule of individual voyages. Seamen employed by the Company do sign "employment agreements" at the beginning and end of each sailing season and upon the transfer of a seaman to a different position. These agreements include his hiring date, department of hire, and designated occupation. The employment agreements are understood to last for the duration of the sailing season and are not individualized by voyage.

In April 1987, Sylvis filed a class action suit seeking damages for the Company's failure to comply with 46 U.S.C. § 574. This provision requires masters of certain vessels to enter into written agreements (articles) with seamen specifying the nature of the voyage or the duration of the seaman's engagement. Failure to comply with this requirement triggers certain penalties. 46 U.S.C. § 575. These provisions were repealed in 1983 and replaced by similar revised provisions codified at 46 U.S.C. §§ 10301(a)(2), 10501(a), 10502(a), and 10508(a), (b). The district court directed Sylvis to amend his complaint to reflect the fact that the statute under which he originally was seeking relief had been repealed and replaced by revised statutory provisions. Accordingly, Sylvis needed to specify that he was seeking relief for violation of either 46 U.S.C. § 574 or 46 U.S.C. § 10502, depending on when the complained of voyages occurred. The district court then proceeded to rule on the Company's motion for summary judgment. The Company's motion claimed that Great Lakes voyages are statutorily exempted from the above described articles requirement, plaintiff's claim is barred by laches, and that the collective bargaining agreement signed by the Company and plaintiff's representative effectively satisfied the statutory articles requirement. The court ruled that the Company's Great Lakes voyages are not exempt from the articles requirement but postponed ruling on the remaining claims pending further briefing by the parties. Subsequently, the court determined that the collective bargaining agreement effectively satisfied the statutory articles requirement and, therefore, granted the Company summary judgment without reaching the laches issue. Thus, the action was never certified as a class action. Plaintiff now appeals the district court's grant of summary judgment.

## I.

Plaintiff contends that summary judgment was improper because the collective bargaining agreement does not contain the requisite terms to render it a shipping articles agreement under 46 U.S.C. § 574 or 46 U.S.C. § 10502. Section 574 provides:

### Shipping articles for vessels in coasting trade

Every master of any vessel of the burden of fifty tons or upward, bound from a port in one State to a port in any other than an adjoining State, except vessels of the burden of seventy-five tons or upward, bound from a port on the Atlantic to a port on the Pacific, or vice versa, shall, before he proceeds on such voyage, make an agreement in writing or in print, with every seaman on board such vessel except such as shall be apprentice or servant to himself or owners, declaring the voyage or term of time for which such seaman shall be shipped.

Its successor, section 10502, which was enacted in 1983, provides:

### Shipping articles agreements

(a) Before proceeding on a voyage, the master of a vessel to which this chapter applies shall make a shipping articles agreement in writing with each seaman on board, declaring the nature of the voyage or the period of time for which the seaman is engaged.

(b) The agreement shall include the date and hour on which the seaman must be on board to begin the voyage.

(c) The agreement may not contain a provision on the allotment of wages or a scale of provisions.

Both 46 U.S.C. § 575 and its successor 46 U.S.C. § 10508 provide that failure to execute the requisite articles renders the master liable to each affected seaman for the highest wages paid for a similar voyage within three months preceding the engagement at the port or place at which the seaman was engaged. The master is also liable for a civil penalty of twenty dollars.[1]

Our standard of review dictates that a grant of "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

Presuming without deciding that the district court correctly determined that Great Lakes voyages are not exempted directly or by implication from the statutory re-

---

1. The penalty provisions of 46 U.S.C. § 575 provide:

   If any master of such vessel of the burden of fifty tons or upward shall carry out any seaman or mariner, except apprentices or servants, without such contract or agreement being first made and signed by the seamen, such master shall pay to every such seaman the highest price or wages which shall have been given at the port or place where such seaman was shipped, for a similar voyage, within three months next before the time of such shipping, if such seaman shall perform such voyage; or if not, then for such time as he shall continue to do duty on board such vessel; and shall moreover be liable to a penalty of $20 for every such seaman, recoverable, one-half to the use of the person prosecuting for the same, and the other half to the use of the United States. Any seaman who has not signed such a contract shall not be bound by the regulations nor subject to the penalties and forfeitures contained in title 53 of the Revised Statutes. R.S. § 4521.

   The penalty provisions replacing section 575 provide:

   (a) A master who carries a seaman on a voyage without first making the agreement required by section 10502 of this title shall pay to the seaman the highest wage that was paid for a similar voyage within the 3 months before the time of engagement at the port or place at which the seaman was engaged. A seaman who has not signed an agreement is not bound by the applicable regulations, penalties, or forfeitures.

   (b) A master engaging a seaman in violation of this chapter or a regulation prescribed under this chapter is liable to the United States Government for a civil penalty of $20. The vessel also is liable in rem for the penalty. 46 U.S.C. § 10508. Section 575 provides for the twenty dollar penalties to be shared by the affected seamen and the United States while section 10508 allocates the entire twenty dollar penalty to the United States.

quirement for shipping articles [2] (except to the extent a company's voyages are between adjoining states), we consider whether a genuine issue of material fact exists as to whether the Company complied with the shipping articles requirement.

Although neither the collective bargaining agreement nor the employment agreement specifies the nature or departure time of a given voyage or the duration of a seaman's engagement on a particular voyage, we are persuaded that, for the purposes of this case only, the collective bargaining agreement that covered plaintiff together with his signed employment agreements constituted a written agreement sufficient to satisfy the intent and requirements if not the letter of 46 U.S.C. §§ 574 and 10502.

The requirement for a written shipping articles agreement was instituted as early as 1790 to protect seamen who were otherwise subjected to harsh treatment and deception. *See Young v. Steamship Co.,* 105 U.S. 41, 26 L.Ed. 966 (1882); *1B Benedict on Admiralty* (7th ed.) § 62 at 5–7. Although hazards confronted by contemporary seamen are less severe, the require-

ment for written shipping articles agreements has remained intact and the articles serve as the initial contract of employment between the master and a seaman. *Weaver v. Pittsburgh Steamship Co.,* 153 F.2d 597, 600 (6th Cir.), *cert. denied sub nom. Rymarkiewicz v. Pittsburgh S.S. Co.,* 328 U.S. 858, 66 S.Ct. 1351, 90 L.Ed. 1630 (1946). In this instance, the employment agreement signed by seamen and the company at the beginning and end of each sailing season served as the contract of employment between seamen and the Company. The employment agreements are dated and verify the seaman's occupation and wages. The agreements are reexecuted and signed if a seaman is transferred and upon completion of the sailing season. The agreement lasts the entire sailing season and is modified by the terms and conditions set forth in the collective bargaining agreement. It is undisputed that plaintiff signed these employment agreements.

An additional purpose underlying the requirement for articles is to avoid disputes about wages and other terms and conditions of employment. *Werling v. The Lud*

---

**2.** We note that the circuits lack consensus as to whether the exemptions enumerated in 46 U.S.C. § 574 and § 10501 extend to vessels engaged in trade on the Great Lakes. The statutory provisions giving rise to the controversy provide:

> None of the provisions of sections 201–203, 542a, 543, 545, 546, 561, 562, 564–571, 574, 577, 578, 591–596, 600, 621–628, 641–643, 644, 645, 651, 652, 662–669, 701–709, 711, 713 of this title shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage.

46 U.S.C. § 544. This provision was repealed and replaced by section 10501(a) and (b), which provide:

> (a) Except for a vessel to which chapter 103 of this title applies, this chapter applies to a vessel of at least 50 gross tons on a voyage between a port in one State and a port in another State (except an adjoining State).
> (b) This chapter does not apply to a vessel on which the seamen are entitled by custom

or agreement to share in the profit or result of a voyage.

In *Weaver v. Pittsburgh S.S. Co.,* 153 F.2d 597, 600 (6th Cir.), *cert. denied sub nom. Rymarkiewicz v. Pittsburgh S.S. Co.,* 328 U.S. 858, 66 S.Ct. 1351, 90 L.Ed. 1630 (1946), we noted that "[t]here is no doubt as to the applicability of the [merchant seamen] statutes [which require written articles agreements with each seaman declaring the nature of the voyage or duration of the ship's engagement] to shipping on the Great Lakes." *See also The Theodore Perry,* 23 F.Cas. 914 (E.D.Mich.1878) (No. 13,880); 1 Norris, The Law of Seamen § 6:24 at 197–98 (4th ed. 1985).

In *Harriman v. Midland S.S. Line, Inc.,* 208 F.2d 564 (2d Cir.1953), however, the court discounted our finding in *Weaver* as conclusionary dicta. The *Harriman* court then affirmed its prior holding in *Mahar v. Gartland S.S. Co.,* 154 F.2d 621 (2d Cir.1946) (46 U.S.C. §§ 596 and 597 are not applicable to voyages on the Great Lakes because those voyages are exempt as "lake going trade touching at foreign ports or otherwise, or in the trade between the United States and British North American possessions...." 46 U.S.C. § 544). *Accord Watler v. M/V Sea Lane,* 232 F.Supp. 387, 391 (S.D.Fla.1964); *United States v. Bain,* 40 F. 455 (E.D.Wis.1889).

*Keefer,* 49 F. 650 (W.D.Pa.), *modified,* 51 F. 44 (3d Cir.1892).

As the district court noted, it is not disputed that plaintiff is a member of the Union and that the Union and the Company executed a collective bargaining agreement that contains explicit provisions governing seamen's compensation. These provisions prevent precisely the type of wage disputes comtemplated by Congress in requiring written agreements to protect seamen. Plaintiff has not contended that he was not compensated for his services or that he was otherwise injured by the failure of the parties' written agreement to specify the nature of, duration, or schedule of a given voyage. The collective bargaining agreement provides extensive protection to seamen concerning wages, hiring policies, hours, grievances, safety, discipline, maintenance and cure, and general working rules within various departments. Moreover, the collective bargaining agreement requires posted sailing notices to advise crew members of vessel sailing time during voyages.

In view of these facts, the district court held that "where a seaman is a member of the union and the union enters into a collective bargaining agreement with the owner or master of a seagoing vessel, then there is effectively a 'contract' entered into at the commencement of each voyage during the term of the agreement." Although we decline to adopt the court's rationale or its view that acceptance of plaintiff's position would emasculate the collective bargaining agreement, we conclude that there is no genuine issue of material fact as to whether a written agreement between plaintiff and the Company covered plaintiff on each of his voyages for the Company. Although the district court's holding is based on the existence of the collective bargaining agreement, we find that the statutorily-required written agreement is comprised, in this case, of both the seasonal employment agreement coupled with the periodic collective bargaining agreement. Together, these agreements satisfy the intent, if not the letter, of 46 U.S.C. §§ 574 and 10502.

Accordingly, we AFFIRM the district court's grant of summary judgment.