## Case No. 1,299.

### The BEN FLINT.

[1 Abb. (U. S.) 126;[1] 1 Biss. 562;[1] 6 Am. Law Reg. (N. S.) 707.]

District Court, D. Wisconsin. Jan. Term, 1867.

MERCHANT SEAMEN—RIGHT TO BE CURED.

1. A seaman who has received an injury or contracted a disease while in the service of the ship, is entitled to be cured or cared for at the expense of the ship. This right is an ingredient in the compensation to be paid to the seaman under the contract of shipment; and is enforced by an award of additional wages.

[Cited in The Guiding Star, 1 Fed. 349; Peterson v. The Chandos, 4 Fed. 651; Longstreet v. The R. R. Springer, Id. 672; The City of Alexandria, 17 Fed. 394; The A. Heaton, 43 Fed. 596. See, also, The Nimrod, Case No. 10,267; Reed v. Canfield, Id. 11,641; The Forest, Id. 4,936; Ringold v. Crocker, Id. 11,843; Knight v. Parsons, Id. 7,886; Babcock v. Terry, Id. 702; Myers v. The Lizzie Hopkins, Id. 9,993; The North America, Id. 10,314; Brown v. The Bradish Johnson, Id. 1,992; The W. L. White, 25 Fed. 503; The Vigilant, 30 Fed. 288.]

2. The general rule that a seaman is entitled to be cured at the expense of the ship, is applicable to seamen employed on the lakes and navigable rivers within the United States.

3. The claim of a seaman to be cured at the expense of the ship is not forfeited because the hurt or sickness may have been incurred through his negligence, unless something more is shown than mere ordinary carelessness, consistent with good faith in the prompt discharge of duty in obedience to orders. To forfeit the claim, the disability or sickness of the seaman must be owing to vicious or unjustifiable conduct; such as gross negligence operating in the nature of a fraud upon the owners,—willful disobedience to orders,—persistent neglect of duty.

[Cited in Peterson v. The Chandos, 4 Fed. 651.]

4. It seems, that where the sickness or disability of the seaman is caused or aggravated by the neglect or misconduct of any of the officers of the ship, an allowance may be made to the seaman for the expenses of his care, beyond the termination of the voyage.

5. But in the absence of misconduct or neglect on the part of some officer, the obligation of the vessel to provide for a disabled or sick seaman is only co-extensive with the obligation of the seaman to the vessel. It terminates, in ordinary cases, when the shipping contract is dissolved.

[Cited in The City of Alexandria, 17 Fed. 394; The Lopez, 43 Fed. 95. See, also,

---

[1] [Reported by Benjamin Vaughan Abbott, Esq., and Josiah H. Bissell, Esq., and here compiled and reprinted by permission. The syllabus is by Benjamin Vaughan Abbott, Esq., and the statement by Josiah H. Bissell, Esq.]

Nevitt v. Clarke, Case No. 10,138; Richardson v. The Juliette, Id. 11,784; The Cambridge, Id. 2,335.]

[In admiralty. Libel by Stephen Morgan against the schooner Ben Flint for expenses of curing libellant of injuries received in service of the vessel.]

[This schooner was employed in transporting lumber from ports on Lake Michigan, in the state of Michigan, to the port of Chicago, in the state of Illinois. Libellant was a seaman on board during the summer of 1866, but contracted before departure on each voyage at the rate of the then current wages. In the month of September he shipped on board, at Chicago, as seaman for the round trip, from there to Manistee, in Michigan, and back, at the rate of two dollars and fifty cents per day. The vessel was freighted at Manistee with lumber in the hold and on deck, leaving a passage way to and from either side forward of the mainmast and the cabin. The lumber near the mainmast being stowed about four and a half feet above deck, the main-boom was brought up to an elevation above the lumber of about eighteen inches, and supported by blocks placed on the saddle, and resting against the mainmast. These blocks or false saddles were known to all on board not to be fastened to the mainmast, and that the boom was so elevated solely for the purpose of managing the vessel. The vessel being about to enter the harbor at Chicago on her return trip, the wind blowing fresh, an order was given by the officer in command to take in the mainsail, which extended over the starboard side. When the order was given, libellant and two other seamen who were standing on the larboard side of the vessel forward, immediately proceeded to that duty. One of the seamen about three feet from the mainmast crawled through the space between the lumber and the boom, and libellant following was hurt by the boom dropping across his back. The third seaman proceeded along the passage way. The wind blowing fresh at the time caused the boom to drop, although it was secured in the usual way from shifting. The vessel moored at her dock in Chicago, when the officers desired libellant to go to the marine hospital in that city, but he preferred to leave for his home in Milwaukee. They paid him his full wages, and one day extra, and assisted him to the cars for Milwaukee. The hurt rendered libellant unfit for duty for several days, requiring medicine and medical advice, nursing and attendance in Milwaukee, to recover for which this libel is brought. Libellant was not an experienced seaman on board a sailing vessel, but was obedient and dutiful.][2]

Stark & McMullen, for libellant.
Emmons & Van Dyke, for respondent.

---

[2] [From 1 Biss. 562.]

MILLER, District Judge. It is contended that the officers of the vessel had neglected their duty in not fastening to the main mast the blocks upon which the boom rested. This, I think, is not tenable. The blocks were placed against the main mast in the usual manner, known to all on board, merely for the temporary support of the boom. The object of the elevation of the boom, and the existence of the passage way, were equally well known. If no passage way had existed, or if libellant had been required or ordered to pass under the boom,—in either case the vessel would be in fault in not securing the blocks or the boom from dropping. I do not think the vessel was in fault in this respect.

It is not necessary to prove by authorities that a seaman, having received an injury or taken sick whilst in the service of the ship, without his fault, is to be cured, or rather cared for, at the expense of the ship. This rule is very ancient, and is universally recognized. Sound policy in favor of commerce, to induce seamen to ship for long voyages, and to perform laborious and hazardous duties on board, and also intrinsic equity sanction the rule. The rule is beneficial to the owner, while he may deem it onerous. It encourages seamen to ship on lower wages, diminishes temptation to plunder, and encourages them in the discharge of duty; and the master will be watchful of their health, and careful of their exposure to disease and accidents. The right to claim for such expenses, or such duty on the part of the ship or vessel, in contemplation of law, is a part of the contract for wages, and a material ingredient in the compensation for the labor and services of the seaman. And in the admiralty a remedy may be applied on the principle of additional wages; and in case of neglect or injuries of the seaman on the part of the ship's officers, it may be extended beyond the time of shipment or the return of the vessel to her home port. The services of a seaman are maritime, and whatever enters into the compensation for such services, and is reducible to money, is in equity decreed as a just remuneration for such services.

This ancient and now universal marine rule, is as applicable to seamen or mariners on the lakes, and on rivers flowing into the ocean, as on the high seas. Seamen or mariners on board boats or vessels employed in navigable fresh waters within the admiralty jurisdiction of the United States are merchant seamen, and are entitled to all rights, and subject to all duties as such. But upon the equitable principle of the marine law, the same consideration under the rule may not be extended indiscriminately to all classes of seamen. Humanity, and the interests of commerce, demand a liberal extension of the rule towards seamen on vessels employed in foreign trade. But the same liberality need not be extended to a seaman shipping for a

voyage for a few days on the lakes,—particularly when additional wages are demanded at the commencement of each voyage. It appeared that libellant demanded increased wages before shipping for each voyage, as the season advanced. And he knew that a marine hospital existed in Chicago, where seamen are cared for after being discharged from service, and where the officers of the vessel wished him to go. It is true that libellant was not obliged to enter the marine hospital as a patient.

Claimant's advocate contends that libellant was in fault for passing over the lumber and under the boom, and cannot therefore sustain his libel. To entitle a sailor to sustain a libel for care and attendance, required in case of sickness or personal injury while in the service of the vessel, the disability must have occurred without his fault. Libellant testifies that he took the course over the lumber to save time; but he had better have said that he thoughtlessly followed the lead of a reckless brother sailor. Sailors are wards of the admiralty, and are rather excused than condemned for accidental mistakes while in the faithful and obedient discharge of duty. Even after punishment for willful disobedience, if they return to duty, their full wages in many cases are allowed. A strict rule of forfeiture should not be applied to a sailor. What may be negligence or fault in persons employed in service on land, may not be in sailors employed on board of vessels. Ordinary negligence, consistent with entire good faith, as in this instance, should not prejudice a sailor's just rights. The marine law rather overlooks ordinary negligence, but punishes those gross faults and vices which affect or prejudice the ship's service or discipline. The accident occurred to libellant while in the prompt discharge of duty, in obedience to a proper command. The dropping of the boom was unforeseen, and not caused by him. Under such circumstances, I do not think that libellant was in fault. To forfeit a claim for care or attendance under the rule, the disability or sickness of the seamen must be owing to vicious or unjustifiable conduct, such as gross negligence operating in the nature of a fraud upon the owners, willful disobedience to orders, and persistent neglect of duty. Walton v. The Neptune, [Case No. 17,135;] Reed v. Canfield, [Id. 11,641;] Johnson v. Huckins, [Id. 7,390;] Pierce v. The Enterprise, [Id. 11,145;] The Nimrod, [Id. 10,267.]

The following cases will explain the principle upon which relief has been allowed sick and disabled seamen: In Harden v. Gordon, [Case No. 6,047,] the rule is elaborately discussed, and the court came to the conclusion that the expense of curing a sick seaman in the course of the voyage is a charge on the ship, and in this charge are included not only medicines and medical advice, but nursing, diet, and lodging, if the seaman be carried ashore; that the court of admiralty has juris-

diction to enforce the payment of these expenses, by a libel, for they are in the nature of additional wages during sickness; and that no stipulation contrary to the maritime law to the injury of seamen will be allowed to stand, unless an adequate additional compensation is given to them. In the case of The George, [Id. 5,329,] the mate took sick during a foreign voyage, and was put on shore, where expenses were incurred for medicines, medical advice, and attendance. It was adjudged that the ship owner should be held liable. In the case of The Nimrod, [Id. 10,267,] a suit for mariner's wages, no deduction was allowed for expenses attending the sickness of a seaman during the voyage, exceeding the balance of his wages. [So, also, in The Forest, Id. 4,936, where the expenses attending the sickness of a seaman during the voyage exceeded the balance of his wages.][s] And in Freeman v. Baker, [Id. 5,084,] it is decided, that a promise of a seaman, sick in a foreign port during the voyage, to pay bills for his medicine, &c., is void, and does not release the ship of liability. See, also, The William Harris, [Id. 17,695;] Brundet v. Tober, [Brunent v. Taber, Id. 2,054;] Ringold v. Crocker, [Id. 11,843;] The Atlantic, [Id. 620;] Walton v. The Neptune, [Id. 17,135.]

The following cases extend the benefit of the rule beyond the time of service of the seaman, as limited by the shipping articles; but it will be observed that misconduct on the part of the officers of the vessel formed an essential ingredient in each case:

In Reed v. Canfield, [Case No. 11,641,] the ship Albion, having been employed in a whaling voyage on the Pacific, came to anchor in the harbor of New Bedford, her home port. The master soon after landed, and gave permission to one of the mates also to go on shore. Both of the mates expressed a desire to avail themselves of this permission, on the return of the boat from landing the master. They both concluded to go on shore, taking with them a boat's crew. The ship being left without officers to enforce discipline, the boat's crew, including libellant, remained on shore after landing the mates, until a storm ensued, which rendered the passage of the boat from shore to the vessel tedious; and libellant's feet were so frozen that they had to be amputated. The disability to libellant would not have happened but for the unwarrantable departure of the officers from their duty.

In Brown v. Overton, [Case No. 2,024,] libellant, a seaman on board the ship Madison, in a voyage from Calcutta to Boston, while reefing a top sail, was thrown from the yard by the sudden motion of the sail and violence of the wind, and broke both of his legs. The master, with the aid of a passenger and one of the crew, set the bones, and secured them in bandages and splints as

---

[s] [From 1 Biss. 562.]

well as they could. Libellant was placed in a hammock, and continued lying in it until four days after the arrival of the ship at Boston, without proper attention, when he was removed to a hospital. He was decreed indemnity for all he had suffered from the omission of the master to go into Saint Helena, the nearest port after the accident. for surgical aid, and the master's culpable neglect of him during the voyage and after arriving at Boston, including expenses incurred after leaving the ship.

In the case of Croucher v. Oakman, 3 Allen. 185, at law. the plaintiff was allowed to recover for damages for the unlawful act of the master in wounding and then discharging him in a foreign port, while employed in the prosecution of a voyage. The plaintiff was allowed for necessary expenses at the foreign port, and for his return, months after the time mentioned in the shipping articles.

And in Moseley v. Scott. 5 Am. Law Reg. (N. S.) 599, at law, plaintiff shipped on board a steamboat as cabin-boy, for a trip to Nashville and back to Cincinnati. During the voyage he became sick with small-pox to such a degree that he was not able to attend to his duty, and was compelled to take to his bed on board, where he remained until the return of the boat. The master and officers of the boat during his confinement on board neglected to furnish him with sufficient medicine, medical advice, attendance, nursing, and diet necessary for his comfort and cure. By reason of such neglect, plaintiff's feet were so frozen that they had to be amputated, which confined him in a hospital several months. A demurrer to the petition, according to the practice in the state of Ohio, was overruled. See, also, Nevitt v. Clarke, [Case No. 10,138,] where the ship in a foreign voyage was sold to foreigners without arrangements being made for the return of a sick seaman.

These are all the American cases that I have had access to. In the first class, misconduct or neglect of the officers of the vessel was not material. In the second class, their misconduct and neglect towards the seaman became an important item for the consideration of the court. Upon every principle of humanity and equity, owners of vessels should be held liable. in amount measured by the actual loss to the seaman, for his sickness or disability caused or aggravated by the misconduct or neglect of their officers.

From this review of American cases I have arrived at the conclusion that, in the absence of misconduct or neglect on the part of the officers, the obligation of the vessel to provide for a disabled or sick seaman, should only be co-extensive in duration to that of the seaman to the vessel. The privileges and liabilities of the parties are, in contemplation of law, measured by the shipping articles. Interests of commerce do not require that the privileges and duties of ship owners and seamen should be extended beyond the reason, nature. and terms of the shipping contract, unless for fault, misconduct, or neglect on the part of officers of vessels towards their seamen; or perhaps, when the removal of a sick or disabled seaman from the vessel, or a change of treatment then being practiced might prejudice his recovery within a reasonable time. Humanity and equity might require indulgence in extreme cases. Libellant received the hurt complained of without fault on the part of the officers of the vessel while coming into the port of discharge; and after his discharge and receipt of his wages, he traveled by land about ninety miles to the city of Milwaukee. He cannot recover against the vessel for expenses incurred by him in this city, and his libel must be dismissed. Decree accordingly.