990 F.2d 885
 1993 A.M.C. 2462
 Robert BLAINEY; Donald Larson; Mosa Mosed Said; Charles
Reed; Carl Mayhew; Vincent Sylvis; Stanley Beckish;
Albert Merchant; Martin Tighe; Said Mudhegi; Richard
Waeme; Robert La Haie; Ali Yaha; and Thomas Puharic, on
behalf of themselves and other Great Lakes Seamen paid
maintenance by Defendants but not unearned wages,
Plaintiffs-Appellants,
v.
AMERICAN STEAMSHIP COMPANY; Bob-Lo; Cleveland Tankers,
Inc.; Huron Cement; Rouge Steel Company;
Interlake Steamship Company; and
Cleveland Cliffs Iron Company,
Defendants-Appellees.
 No. 91-2274.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 8, 1992.
Decided April 6, 1993.
Rehearing Denied May 4, 1993.
Rehearing and Rehearing En Banc
Denied May 27, 1993.
 
 Dennis M. O'Bryan (argued and briefed), O'Bryan Law Center, Birmingham, MI, for plaintiffs-appellants.
 Thomas W. Emery, Daniel S. Saylor (argued and briefed), Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, MI, for American S.S. Co.
 Robert H. Fortunate, Foster, Meadows & Ballard, Detroit, MI, for Bob-Lo.
 Richard A. Dietz, Foster, Meadows & Ballard, Detroit, MI, for Cleveland Tankers, Inc.
 Richard C. Sanders, Hill, Lewis, Adams, Goodrich & Tait, Detroit, MI, for Huron Cement.
 Paul D. Galea (argued), Foster, Meadows & Ballard, Detroit, MI, for Rouge Steel Co., Interlake S.S. Co.
 William D. Carle (argued), Ray, Robinson, Hanninen & Carle, Cleveland, OH, for Cleveland Cliffs Iron Co.
 Before: GUY and NORRIS, Circuit Judges; and BROWN, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 This class action invokes our admiralty jurisdiction and raises the issue of whether Great Lakes seamen who become sick or injured while on a voyage can recover unearned wages beyond the end of that voyage. The seamen plaintiffs appeal the district court's grant of summary judgment to the seven shipowner defendants. We arrive at the same result as did the district court concerning six of the defendants and affirm its judgment, albeit upon different reasoning. We remand the cause against the seventh shipowner for further proceedings.
 
 I. Admiralty Law Background
 
 2
 Rather than relying upon the protection of workers' compensation statutes, seamen who suffer illness or injury on the job look to a unique package of remedies. Due to "historical tradition and the realization that seamen are required to endure special perils and hardships," federal common law of the sea accords seamen special relief not available to other workers, including maintenance, cure, and unearned wages.[1] Thomas J. Schoenbaum, Admiralty and Maritime Laws § 5-1 (1987). Maintenance refers to a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship, while cure alludes to the duty to provide necessary medical care and attention. See Al-Zawkari v. American S.S. Co., 871 F.2d 585, 586 n. 1 (6th Cir.1989). A shipowner is liable to pay maintenance and cure to the point of maximum cure, that is, when the seaman's affliction is cured or declared to be permanent. See Farrell v. United States, 336 U.S. 511, 517-19, 69 S.Ct. 707, 710-11, 93 L.Ed. 850 (1949). Finally, a shipowner must also pay a stricken seaman's unearned wages "at least so long as the voyage[2] is continued." The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903) (quoted in McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)).
 
 
 3
 The shipowner's obligation to pay maintenance, cure, and unearned wages can be traced to several longstanding policy rationales articulated in admiralty case law. First, it recognizes the unique relationship of sailors to their ships, which, when at sea, approaches "personal indenture." Pacific S.S. Co. v. Peterson, 278 U.S. 130, 137, 49 S.Ct. 75, 77, 73 L.Ed. 220 (1928). The shipowner's duty also recognizes the difficulty of a seaman's work, and protects injured mariners from being put ashore and abandoned in a foreign port. See 2 Martin J. Norris, The Law of Seamen § 26.9 at 23-24 (4th ed. 1985). As Justice Story noted in his thorough analysis of the subject, the obligation to pay maintenance, cure, and unearned wages also aligns the shipowners' interests with the health of their seamen, preserves an important class of citizens needed for national commerce and defense, and encourages seamen "to engage in perilous voyages with more promptitude, and at lower wages." Harden v. Gordon, 11 F.Cas. 480, 483 (C.C.D.Me.1823). See also Vella v. Ford Motor Co., 421 U.S. 1, 3-4, 95 S.Ct. 1381, 1382-1383, 43 L.Ed.2d 682 (1975) (maintenance and cure duty "fosters the combined object of encouraging maritime commerce and assuring the well-being of seamen").
 
 
 4
 For these reasons, a shipowner's ancient duty to pay maintenance, cure, and unearned wages is imposed by the law itself as an obligation annexed to the employment; it exists regardless of any employment contract, including a collective bargaining agreement. See Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932). Thus, the duty to provide maintenance, cure, and unearned wages cannot be entirely abrogated by contract, although this circuit has held that a seaman's right to these remedies can be modified and defined by contract. Al-Zawkari, 871 F.2d at 588. See also Dowdle v. Offshore Express, Inc., 809 F.2d 259, 263-64 (5th Cir.1987) ("there is a fundamental difference between contractual regulation of the rate of maintenance payments and contractual elimination of such payments altogether").
 
 
 5
 With these principles in mind, we turn to the facts of this case, many of which have been stipulated by the parties.
 
 II. Facts
 
 6
 For over 150 years, it has been the unbroken custom of the Great Lakes sailing trade to pay unearned wages only until the end of the voyage on which a sailor is injured or falls ill. Accordingly, if a seaman was injured while the ship was out of port, he would receive the wages he would have earned to the end of the voyage, but after the ship arrived at port, he collected only maintenance and cure, even if he were forced to miss future journeys with his ship. Under this custom, a voyage is a port-to-port trip; a trip "from an unloading port to a loading port or vice versa."
 
 
 7
 In 1985, twelve sailors challenged this custom by bringing this suit in the United States District Court for the Eastern District of Michigan against the defendant corporations, which operate ships on the Great Lakes. All plaintiffs were injured or became ill while in service of their ships. They did not dispute that they had received appropriate sums as maintenance and cure, nor that they had received unearned wages to the end of the voyage on which they were injured or fell ill. They claimed, however, that they should have received unearned wages beyond the end of the journey to the end of their "term of employment," that is, either to the end of the Great Lakes sailing season, to the end of a pay period, or to the termination of the articles under which they served.
 
 
 8
 Defendant shipowners operate vessels carrying various commodities, such as iron ore, coal, and limestone, between upper and lower Great Lakes ports. Also represented are operators of tankers and excursion vessels. Depending upon their type, these vessels normally are in their home ports at least every three days, some more frequently. Excursion craft are never more than an hour away from port.
 
 
 9
 The plaintiff seamen serve under agreements called "articles." Traditionally, articles are a type of engagement agreement between the crew members and the employer shipowner, in which the employer agrees to pay wages for services rendered by the seamen. Articles are required by statute, and must specify the "nature of the voyage or the period of time for which the seaman is engaged." See 46 U.S.C. §§ 10501-02. All the plaintiff seamen are also covered by collective bargaining agreements negotiated by their unions with the defendant shipowners, and the parties have stipulated that
 
 
 10
 if the [articles'] provisions are in conflict with the applicable collective bargaining agreement, then the latter controls. Despite the use of the articles by Great Lakes vessel owners, it has never been the intention of the shipowner or seamen that a seaman was bound to the ship (or required to remain in the shipowner's employment) for the period of time specified in the articles ... nor has it been the intention of either that the shipowner be bound to provide employment during the stated term, unless provided for in the applicable collective bargaining agreement.
 
 
 11
 Thus, in Great Lakes shipping practice, the shipowners have regarded articles primarily as a roster of crew members. The collective bargaining agreements, by contrast, cover the terms and conditions of employment of sailors aboard ship, such as rates of pay, wage computation, working conditions, right to employment, periods of employment, vacations, certain aspects of medical care, pensions, sickness and accident benefits (in some instances), overtime, and transportation. Moreover, they specify that maintenance shall be paid at a stipulated rate, though they make no reference to unearned wages.
 
 
 12
 No agreement now in force between plaintiffs and defendants provides for the payment of unearned wages for any specified period of time, and no union has raised unearned wages as a topic of collective bargaining. Defendants have no record of any union having filed a grievance for failure to pay unearned wages, nor are any of the unions a party to this case.III. District Court Proceedings
 
 
 13
 The district court denied motions to dismiss by various defendants and, in November 1987, certified this case as a class action.
 
 
 14
 In December 1989, the district court granted plaintiffs' motion for partial summary judgment against defendant Rouge Steel, finding that this court's opinion in Sylvis v. Rouge Steel Co., 873 F.2d 122 (6th Cir.1989), precluded Rouge Steel from relitigating the issue of the length of its crew members' terms of employment. Rouge Steel did not appeal that decision. Because Rouge Steel's position is unique among the defendants, the conclusion reached in section IV of this opinion is addressed to the district court's decision as it affects the other defendant shipowners.
 
 
 15
 On September 30, 1991, the district court granted summary judgment to all the defendant shipowners. Reed v. American S.S. Co., 773 F.Supp. 991 (E.D.Mich.1991). The district court's decision noted the importance of "the term of plaintiffs' employment," but then shifted its focus to "the point at which the seamen were no longer obligated to the vessel." Id. at 993. In the district court's view, this court in Great Lakes S.S. Co. v. Geiger, 261 F. 275 (6th Cir.1919), "found that the obligation of the vessel to provide for a disabled or sick seaman should be coextensive in duration with the seaman's employment obligation to the vessel." Reed, 773 F.Supp. at 994.
 
 IV. Analysis
 
 16
 Under the Federal Rules of Civil Procedure, a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment to the defendants de novo, drawing all reasonable inferences in favor of the nonmoving plaintiffs. Storer Communications, Inc. v. National Ass'n of Broadcast Employees & Technicians, 854 F.2d 144, 146 (6th Cir.1988).
 
 
 17
 The district court relied upon two older cases, Great Lakes S.S. Co. v. Geiger, 261 F. 275 (6th Cir.1919), and The Ben Flint, 3 F.Cas. 183 (D.Wis.1867), for the proposition that the obligation of shipowners to provide for their seamen should be coextensive with the seamen's employment obligation to the vessel. Reed, 773 F.Supp. at 993-94. Since the court found that the seamen were obligated only to the end of the voyage, it denied their claim for unearned wages beyond that point. Id. at 994.
 
 
 18
 The district court appears to have seized upon language quoted by this court in Geiger from the opinion in The Ben Flint to the effect that "[i]n the absence of misconduct or neglect on the part of the officers, the obligation of the vessel to provide for a disabled or sick seaman should only be co-extensive in duration to that of the seaman to the vessel." The Ben Flint, 3 F.Cas. at 186. While the facts in The Ben Flint case are unclear, and the court's reasoning is confusing, it appears that the court limited a seaman who had signed on for a few days' voyage on the Great Lakes to unearned wages for the length of his voyage. The court noted that "[h]umanity, and the interests of commerce, demand a liberal extension of the rule towards seamen on vessels employed in foreign trade. But the same liberality need not be extended to a seaman shipping for a voyage for a few days on the lakes." Id. at 184-85. The obligation language quoted by the district court in the instant case was used by The Ben Flint court in the course of determining that on the Great Lakes, the "privileges and liabilities of the parties are ... measured by the shipping articles." Id. at 186.
 
 
 19
 In Geiger, a seaman who signed articles for a voyage from a Lake Erie port to Lake Superior and back was treated for an injury sustained during the voyage and was taken to a hospital. Geiger, 261 F. at 276. He received wages to the end of the voyage and maintenance during his thirteen-week convalescence which followed. In his lawsuit, he claimed he was also entitled to thirteen weeks' unearned wages. In limiting wages to the end of the seaman's voyage, this court cited The Ben Flint and a number of other cases as standing for the rule that unearned wages are due to the termination of the voyage, but the court attached no particular significance to The Ben Flint. Accordingly, the district court was mistaken when it concluded that this court adopted The Ben Flint opinion and "found" that a shipowner's duty was coextensive with a seaman's obligation to his vessel. Reed, 773 F.Supp. at 994. Neither Geiger nor The Ben Flint is inconsistent with the Great Lakes custom discussed earlier in this opinion.
 
 
 20
 Therefore, the district court erred to the extent it relied upon an employment obligation test. The holding of this court in Geiger recognized the basic principle that a stricken seaman is entitled to "his wages, at least so long as the voyage is continued." Geiger, 261 F. at 277 (quoting The Osceola, 189 U.S. at 175, 23 S.Ct. at 487). This continues to be an accurate statement of the general rule of admiralty law. However, in the years that have passed since our holding in Geiger, courts have refined and clarified the concept of voyage insofar as that term is used to delimit the obligation to pay unearned wages. Thus, the point at which a voyage ends is measured differently if the seaman's articles govern travel among domestic ports (coastwise articles) than if travel is to foreign ports (foreign articles).[3] A leading admiralty commentator summarizes the foreign and coastwise rules:
 
 
 21
 There can be little question that a seaman on foreign articles whose illness or injury extends beyond the termination of the voyage (as that term is indicated in the articles) is entitled to wages to the termination of the voyage.
 
 
 22
 On coastwise voyages where the articles are commonly entered into for a period of time (as for example, six months, etc.) rather than for a stated voyage, the seaman can recover his wages for the entire period of time contemplated by the contract where his illness or injury has not reached the maximum attainable point of cure at the expiration of that period.
 
 
 23
 ....
 
 
 24
 Unlike maintenance and cure which may extend for a reasonable period beyond the expiration of the voyage until the point of maximum cure attainable has been reached, wages cease with the end of the voyage or the end of the engagement (whichever properly can be considered as the terminal point) and cannot extend beyond such period of time.
 
 
 25
 2 Martin J. Norris, The Law of Seamen § 26.7 at 16-18 (4th ed. 1985). See also 1B Ellen M. Flynn et al., Benedict on Admiralty § 52 (7th ed. 1993) (wages to end of voyage for foreign travel, to end of "employment period" for coastwise commerce). This distinction recognizes the fact that in contrast to voyages made to foreign lands, voyages in coastal and Great Lakes shipping are usually of very short duration.
 
 
 26
 In Farrell v. United States, 336 U.S. 511, 520, 521, 69 S.Ct. 707, 711, 712, 93 L.Ed. 850 (1949), the only unearned wages case decided by the Supreme Court this century, both the majority and dissenting opinions acknowledged the existence of the coastwise rule for measuring unearned wages by the period of employment. Courts of appeals in at least four other circuits have followed the coastwise rule, holding that if the employment is for a period other than the voyage, such as on coastwise articles for a definite time, the end of the voyage rule does not apply and wages are due for the period of employment. Vickers v. Tumey, 290 F.2d 426, 434 (5th Cir.1961). Accord Archer v. Trans/American Servs., Ltd., 834 F.2d 1570, 1575 (11th Cir.1988) (expressly following Vickers and granting wages for one-year period); Joncich v. Vitco, 234 F.2d 161 (9th Cir.1956), aff'g Vitco v. Joncich, 130 F.Supp. 945, 949 (S.D.Cal.1955) (recognizing right to receive "full wages throughout the period of employment," whether "for a voyage or for a definite time"--period here was fishing season); Robinson v. Pocahontas, Inc., 477 F.2d 1048, 1051 (1st Cir.1973) (same).
 
 
 27
 Accordingly, the weight of authority follows the rule that when a seaman employed under coastwise articles for a definite period of time is injured in the service of his ship, he may collect unearned wages for the entire period of employment contemplated by the contract, provided his illness or injury has not reached maximum cure by the end of that period. 2 Martin J. Norris, The Law of Seamen § 26.7 at 16-18. See Archer, 834 F.2d at 1575; Robinson, 477 F.2d at 1051; Vickers, 290 F.2d at 434; Joncich, 234 F.2d at 163.
 
 
 28
 Merely stating the rule, however, does not resolve this appeal. While the plaintiff seamen clearly served under coastwise articles, the coastwise rule is premised upon employment being entered into for a definite period of time rather than for a single voyage. E.g., 2 Martin J. Norris, The Law of Seamen § 27.7. See Vickers, 290 F.2d at 434. Hence, in order for plaintiffs to establish that they were entitled to unearned wages beyond the end of a voyage, they were required to prove the existence of a definite period of employment that extended beyond the end of each voyage.
 
 
 29
 We affirm the district court's grant of summary judgment because three unique and undisputed facts in this case distinguish it from other coastwise article cases and demonstrate that neither the seamen's articles nor any other circumstances created a definite period of employment beyond voyage's end.
 
 
 30
 First, the periods of time specified in the articles were not definite terms of employment at all: the parties stipulated that it has
 
 
 31
 never been the intention of the shipowner or seamen that a seaman was bound to the ship (or required to remain in the shipowner's employment) for the period of time specified in the articles, be it bi-weekly or monthly, nor has it been the intention of either that the shipowner be bound to provide employment during the stated term, unless provided for in the applicable collective bargaining agreement.
 
 
 32
 Plaintiffs have since attempted to retreat from the plain meaning of this stipulation, arguing that the collective bargaining agreements incorporate the articles, thereby implicitly rendering the articles' terms of employment binding. We have reviewed this argument in the context of the collective bargaining agreements, the stipulations, and the other circumstances of this case, and find it unpersuasive.
 
 
 33
 Second, it is undisputed that the longstanding custom on the Great Lakes has been to pay unearned wages only to the end of a voyage--that is, a trip from a loading port to an unloading port, or vice versa.
 
 
 34
 Third, plaintiffs were represented by unions which had negotiated collective bargaining agreements with all defendant shipowners. These agreements determine periods of employment and which seamen will be employed for what voyages, through seniority and hiring hall provisions. None of the agreements mention, let alone alter, the Great Lakes custom of paying unearned wages only through the end of the voyage.
 
 
 35
 Therefore, under the undisputed evidence of this case, plaintiffs' articles did not establish definite periods of employment extending beyond the end of particular voyages. Instead, the seamen and shipowners defined their employment relationship through collective bargaining agreements.[4] Thus, one would have to look to the collective bargaining agreements, not the articles, in order to find any definite period of employment. However, the record and stipulations of the parties make clear that nothing in the collective bargaining agreements established periods of employment that exceeded the length of a particular voyage. Since the customary method of calculating the entitlement of Great Lakes seamen to unearned wages has not been altered through the collective bargaining process, we conclude that in this case the length of the voyage as defined by custom on the Great Lakes is the period of employment for purposes of applying the coastwise rule that allows unearned wages to the end of the employment period.[5]
 
 
 36
 The situation of these seamen--unionized workers collectively bargaining with their employers--is vastly different from the one that spawned common law admiralty rules concerning unearned wages. Were we to ignore this reality, we would be turning a blind eye to the very public policy concerns that gave rise to those ancient rules: that seamen were particularly vulnerable to abuse and in need of legal protection. Because the plaintiff seamen enjoy the protection of collective bargaining in defining the length of their employment, we should respect the legitimate results of that process and apply admiralty rules on unearned wages in the context of those results.
 
 
 37
 Accordingly, under the facts of this case and for purposes of the coastwise rule, plaintiffs' definite periods of employment are measured by the duration of individual voyages. Thus, their entitlement to unearned wages extends no further.
 
 V. Rouge Steel Company
 
 38
 On March 5, 1990, the district court granted partial summary judgment against defendant Rouge Steel on the issue of the term of employment claimed by its employee, plaintiff Vincent Sylvis. In its opinion of December 18, 1989, which underlies that order, the district court gave preclusive effect to our opinion in Sylvis v. Rouge Steel Co., 873 F.2d 122 (6th Cir.1989), and held that Sylvis' employment with Rouge Steel was for the sailing season.
 
 
 39
 Rouge Steel has not appealed that decision. Although we cannot know for certain the reason it chose not to appeal that order, it is obvious that the conclusion of the district court in its March 5, 1990 order that "employment agreements between seamen employed by [Rouge Steel] and [Rouge Steel] are seasonal" may be significant under the rationale we have adopted in this opinion, since the agreements may provide the definite period of employment we found lacking in the relationships between the other defendant shipowners and their seamen. Accordingly, while we affirm the order of the district court granting summary judgment to the other shipowner defendants, we must remand this cause to the district court insofar as defendant Rouge Steel and plaintiff Sylvis (and any members of the class he might represent) are concerned, in order that the district court may consider the effect of its March 5, 1990 order in the context of our opinion issued today.
 
 
 40
 Accordingly, the judgment of the district court is affirmed as to defendants Interlake Steamship Co., Cleveland Cliffs Iron Company, Huron Cement, Cleveland Tankers, Inc., Bob-Lo, and American Steamship Company, but vacated as to defendant Rouge Steel Company. As to that defendant, this cause is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 In addition to maintenance, cure, and unearned wages, a seaman may also seek damages from the shipowner for negligence under the Jones Act, 46 U.S.C.App. § 688, or for a breach of the duty to provide a seaworthy ship. See generally 1B Ellen M. Flynn et al., Benedict on Admiralty §§ 21-32 (7th ed. 1993). This combination of remedies provides substantially greater potential relief than workers' compensation, which land employees receive in lieu of a tort action sounding in negligence. Thus, as commentators have observed, seamen enjoy "a system of accident and health insurance at shipowner's expense more comprehensive than anything yet achieved by shorebound workers," and they have consequently opposed efforts to replace that system with a workers' compensation act. Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty 281-82 (2d ed. 1975). See also Farrell v. United States, 336 U.S. 511, 518, 69 S.Ct. 707, 710, 93 L.Ed. 850 (1949); John B. Shields, Seamen's Rights to Recover Maintenance and Cure Benefits, 55 Tul.L.Rev. 1046, 1049 (1981)
 
 
 [2]
 The meaning of the term "voyage" varies in different shipping contexts, and is central to this case, as will be shown below
 
 
 [3]
 Chapters 103 (Foreign and Intercoastal Voyages) and 105 (Coastwise Voyages) of 46 U.S.C. also distinguish foreign from coastwise shipping, with 46 U.S.C. § 10501(a) applying the coastwise designation to "a vessel of at least 50 gross tons on a voyage between a port in one State and a port in another State (except an adjoining State.)"
 
 
 [4]
 As noted earlier, the parties stipulated that "if the [articles'] provisions are in conflict with the applicable collective bargaining agreement, then the latter controls."
 
 
 [5]
 It is merely coincidental that under the circumstances of this case, the coastwise rule (period of employment) yields the same result as the foreign rule (end of voyage). The district court reached that result without recognizing the coastwise rule. This court may, of course, affirm on grounds other than those relied upon by the district court. Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985)