KAHN, Judge.
Appellee Moran Towing of Florida, Inc., operates a number of tugboats, generally on the St. Johns River in the Jacksonville area. Although not strictly a union shop, Moran and its predecessor have, for some 30 years, manned vessels with crews drawn primarily from the Masters, Mates and Pilots Union (union). Appellee Harold Mays, a chief engineer, has been a member of the union and, through his union affiliation, has worked for Moran or its predecessor on tugs operating on the St. Johns River since 1956. On August 8, 1989, Mays suffered injury when he slipped and fell while boarding a Moran tug. At the time of the accident, Mays was assigned to two different Moran vessels. On August 17, 1990, Mays reached maximum medical improvement. The collective bargaining agreement in effect between Morán and the union at the time of the accident covered the period from April 16, 1988, through April 16, 1991.
Mays brought an action against Moran seeking recovery for Jones Act negligence, unseaworthiness, and maintenance, cure and unearned wages. This appeal raises only the propriety of the award made by the trial court under the count seeking maintenance, cure and unearned wages. The circuit judge ruled that Moran had a duty to pay Mays unearned wages from the day of the accident until April 16, 1991, the end of the collective bargaining agreement, and accordingly entered judgment in favor of Mays on the claim for unearned wages. The court subsequently awarded *1090 attorney’s fees based upon the recovery of unearned wages. We reverse.
As noted, Moran and its predecessor have had collective bargaining agreements with the union since at least the 1950’s. Under these contracts, the union tries to supply Moran with sufficient, available, fit-for-duty crews to man Moran’s vessels as necessary. The 1988 agreement provided that union crews assigned to Moran’s vessels would be paid strictly on the basis of days actually worked. If a crew member did not work on a particular day, he would not be paid. This provision represented a concession made by the union during the 1988 collective bargaining. Mays, who was 60 years old at the time of his injury, did not like the new agreement. The record reflects that within two months before the effective date of the 1988 agreement, six of Mr. Mays’ coworkers at Moran, aged 57 through 64, elected retirement. Four more retired during the three years of the agreement.
Testimony established that Harold Mays began working for Moran’s predecessor, Florida Towing Company, in 1956 and worked through, and even after, the date of his injury, August 8, 1989. During his first ten years, Mays occasionally took lengthy coastwise voyages from Florida to New Jersey, and also made ocean going voyages. In recent years, however, Mays has been assigned in the Jacksonville area to a number of different Moran vessels as chief engineer. From day to day Mays had assignments on different Moran vessels.
On the day of his accident, Mays had drawn a simultaneous assignment to two different vessels, the Cathleen E. Moran and the Mary Coppedge. Mays had no direct contract between himself and Moran, nor had he ever signed on shipping articles for a particular vessel. He fell while boarding the Cathleen E. Moran.
The Cathleen E. Moran is a harbor tug berthed at Blount Island in Jacksonville. The tug assisted other ships in harbor docking in the St. Johns River and moved barges around the Talleyrand Port in the Jacksonville shipyard. The tug never left Jacksonville. The Cathleen E. Moran had a captain and a regular crew, of which Mays was not a member. Through the union contract, however, Mays had worked periodically on that particular vessel for some three or four years before the accident.
On the day of his injury, Mays made one short trip aboard the Cathleen E. Moran in the very early morning. After that trip he worked on a water main on the pier and suffered injury while boarding the Cathleen E. Moran for the second trip of the day.
Mr. Mays’ Jones Act claim against Moran proceeded to a jury trial in February 1992. The judge decided during the trial to rule on and make an award as to Mays’ unearned wages claim as a matter of law separate from the jury’s verdict. The jury returned a verdict for Mays on his Jones Act claim in the amount of $335,000.00. It found Moran 70% comparatively negligent and Mays 30% comparatively negligent. Mays then moved for entry of judgment on the unearned wage claim, seeking an award of unearned wages from the last day he worked, November 27, 1989, until the expiration of the collective bargaining agreement on April 16, 1991. The trial court proceeded to enter two final judgments. Finding Mays entitled to recovery of $64,510.83 on his claim for unearned wages, the judge deducted this amount from the jury award, then assessed the 30% comparative negligence finding reached by the jury, and entered judgment in favor of Mays for $189,902.42. In this order the trial court also retained jurisdiction to modify the judgment to reflect the proper amount due plaintiff pursuant to the jury verdict, “in the event the unearned wage judgment is reversed.” In a second final judgment, the one under direct appeal here, the trial court awarded Mays $64,-510.83 and reserved jurisdiction to assess attorney’s fees. Being a no fault concept, recovery for maintenance, cure and unearned wages is not subject to comparative negligence, nor dependent upon the shipowner’s negligence. See generally, Gilmore and Black, The Law of Admiralty (2d Ed. § 6-6) (“except for injury and illness *1091 caused by the seaman’s gross and willful misconduct or existing at the time the seaman signed on and knowingly concealed by him, the shipowner is liable for any injury which occurs or any illness which manifests itself while the seaman is under articles”).
Moran has always taken the position that it owed Mays no unearned wages at all. Moran fully paid Mays all unearned wages for the remainder of the day on which he was injured. Accordingly, argues Moran, since Mays was a daily worker simultaneously assigned to two different Moran vessels on that day, and the voyage on which he was injured concluded on the same day of the injury, no additional amount is owed. The controlling question in this case is whether the trial court overstepped its authority by awarding unearned wages for a period of time measured by the duration of the collective bargaining agreement.
The right of a seaman to recover unearned wages is a creature of maritime law arising under the historical concept of maintenance and cure. Maintenance and cure is a no-fault principle arising directly out of the relationship of the injured seaman and his vessel. Maintenance seeks to provide the ill or injured seaman with compensation sufficient to pay for care, including lodging expenses. It is in the nature of a per diem living allowance, which extends until the seaman reaches the point of maximum cure. Pelotto v. L & N Towing Co., 604 F.2d 396 (5th Cir.1979). Cure is the medical care necessitated by a seaman’s illness or injury which is borne by the employer or by the ship until the point of “maximum cure.” Id.
The third item of recovery in a maintenance and cure action is for unearned wages. In the traditional view, unearned wages serve to provide compensation for a seaman who becomes ill or injured on a voyage and who no longer can fulfill his service to a particular vessel to which he is bound for the duration of the voyage. The traditional rule focuses upon the seaman’s obligation to the vessel, and would suggest that the obligation to pay unearned wages does not endure beyond the point at which a seaman is no longer obligated to the vessel. Reed v. American Steamship Co., 773 F.Supp. 991, 994 (E.D.Mich.1991), aff'd in part, vacated in part, Blainey v. American Steamship Co., 990 F.2d 885 (6th Cir.1993). Moran argues that unearned wages is a narrow principle. Accordingly, unearned wages, as historically developed, have not, says Moran, compensated a seaman indefinitely as a substitute either for past lost wages under an employment contract or for loss of future earning capacity. Moran urges us to focus upon the relationship of the injured seaman with the vessel, and suggests that the collective bargaining agreement in this case has at best a tenuous link with such relationship.
In the recent case of Blainey v. American Steamship Co., supra, the Sixth Circuit has examined the historical antecedents of unearned wages:
[A] shipowner must also pay a stricken seaman’s unearned wages “at least so long as the voyage is continued.” The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903) (quoted in McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)). The shipowner’s obligation to pay maintenance, cure, and unearned wages can be traced to several longstanding policy rationales articulated in admiralty case law. First, it recognizes the unique relationship of sailors to their ships, which, when at sea, approaches “personal indenture.” Pacific S.S. Co. v. Peterson, 278 U.S. 130, 137, 49 S.Ct. 75, 77, 73 L.Ed. 220 (1928). The shipowner’s duty also recognizes the difficulty of a seaman’s work, and protects injured mariners from being put ashore and abandoned in a foreign port. See 2 Martin J. Norris, The Law of Seamen s. 26.9 at 23-24 (4th ed. 1985). As Justice Story noted in his thorough analysis of the subject, the obligation to pay maintenance, cure, and unearned wages also aligns the shipowners’ interests with the health of their seamen, preserves an important class of citizens needed for national commerce and defense, and en *1092 courages seamen “to engage in perilous voyages with more promptitude, and at lower wages.” Harden v. Gordon, 11 F.Cas. 480, 483 (C.C.D.Me.1823). See also Vella v. Ford Motor Co., 421 U.S. 1, 3-4, 95 S.Ct. 1381, 1382-1383, 43 L.Ed.2d 682 (1975) (maintenance and cure duty “fosters the combined object of encouraging maritime commerce and assuring the well-being of seamen”).
For these reasons, a shipowner’s ancient duty to pay maintenance, cure, and unearned wages is imposed by the law itself as an obligation annexed to the employment; it exists regardless of any employment contract, including a collective bargaining agreement. See Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932).
990 F.2d at 887 (footnote deleted).
Mays points out that the end of the voyage rule is not, however, ironclad. “If ... the employment is for a period other than the voyage, such as on coastwise articles for six months or for a definite time, the end of the voyage concept does not apply and wages are due (the seaman) for the period of employment.” Vickers v. Tumey, 290 F.2d 426, 434 (5th Cir.1961). In Vitco v. Joncich, 130 F.Supp. 945 (S.D.Cal.1955), aff'd, 234 F.2d 161 (9th Cir. (Cal.) 1956), for example, the court allowed a tuna fisherman who suffered a series of heart attacks recovery of wages for the duration of the entire “tuna season,” reasoning that the season was the proper measure of the claimant’s period of employment. Mr. Mays argues that Moran’s tug operations do not involve the traditional type of maritime setting, in that Moran’s tugs do not embark upon a true “voyage.” Mays prefers a rule that would look to the period of employment, rather than the length of the voyage, and urges us that the collective bargaining agreement between the union and Moran served as an employment contract for Mays.
Having thoroughly considered the arguments raised by Mays in his attempt to uphold the trial court’s ruling on unearned wages, we find ourselves unable to discern a reason why the ancient maritime concept of unearned wages should mandate an award of wages to a seaman who is not contractually bound to service for a definite period of time, and who seeks an award for a period of time beyond his date of maximum medical improvement. We do not construe the collective bargaining agreement as an employment contract between Mays and Moran, since Mays had no binding obligations to Moran under the agreement. While the evidence indicates that work was regularly offered to union members pursuant to the collective bargaining agreement, the record contains no evidence indicating that Mays had a continuing obligation to present himself for work with Moran until the expiration of the agreement. Indeed, it would appear that the very length of the agreement is the product of the collective bargaining process and bears no direct relationship to an obligation owed by union members to the various vessels owned and operated by Moran.
In the present case, Mays was paid for the complete day that he was injured, and accordingly no additional unearned wages are legally due him. Since we find that the collective bargaining agreement in this case did not serve as a mutually binding employment contract for a definite period of time, we need not reach the question of whether a court would properly apply a different rule in the appropriate case. In this case, however, the end of the voyage rule does not work an injustice to Mays, nor does it allow a windfall to Moran.
The judgment here under review is REVERSED, and the cause REMANDED so that the trial court may modify the Jones Act judgment pursuant to the reservation of jurisdiction.
WOLF and WEBSTER, JJ., concur.