*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0321P (6th Cir.)
File Name: 00a0321p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

ROBERT WEST,
   *Plaintiff-Appellee,*

  *v.*

MIDLAND ENTERPRISES, INC.,
THE OHIO RIVER COMPANY,
and MOTOR VESSEL W.H.
DICKHONER,
   *Defendants - Appellants.*

No. 99-5982

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 98-00027—William O. Bertelsman, District Judge.

Argued: August 9, 2000

Decided and Filed: September 14, 2000

Before: COLE and GILMAN, Circuit Judges; TARNOW,
District Judge.

————————

*The Honorable Arthur J. Tarnow, United States District Judge for
the Eastern District of Michigan, sitting by designation.

_____

**COUNSEL**

**ARGUED:** Todd M. Powers, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellants. John J. Osterhage, LAWRENCE & SCHLETKER, Warsaw, Kentucky, for Appellee. **ON BRIEF:** Todd M. Powers, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellants. John J. Osterhage, LAWRENCE & SCHLETKER, Warsaw, Kentucky, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Robert West, a deckhand, alleged that he suffered psychological injuries as a result of being ordered to watch a pornographic videotape by the captain of the *Motor Vessel W.H. Dickhoner*. He sued the *M/V Dickhoner*, The Ohio River Company (the vessel's operator), and Midland Enterprises, Inc. (the vessel's owner) for negligence under the Jones Act, 46 U.S.C. § 688, for breach of the duty to provide a seaworthy vessel, and for maintenance and cure. The district court granted summary judgment for the defendants (collectively ORCO) on West's claims for negligence and unseaworthiness, concluding that neither of those theories of liability supported an award for emotional injuries that were not caused by a physical impact. On West's claim for maintenance and cure, however, the district court concluded that ORCO was subject to liability. It made this ruling without holding an evidentiary hearing on liability or any motion by West for summary judgment.

ORCO filed this interlocutory appeal, challenging the district court's denial of ORCO's motion for summary judgment on West's maintenance and cure claim, and the district court's sua sponte grant of judgment for West on that claim. For the reasons set forth below, we **AFFIRM** the

negligence or willful disobedience of orders") (internal quotation marks and citations omitted).

**III. CONCLUSION**

For all of the reasons set forth above, we **AFFIRM** the district court's decision to deny ORCO's motion for summary judgment on West's maintenance and cure claim, but **REVERSE** its sua sponte grant of judgment for West on that claim, and **REMAND** this case for further proceedings consistent with this opinion.

irrelevant, however, because the pornographic videotape that allegedly caused him to have mental problems was brought onto the vessel  by the captain.   Moreover, West's pornographic videotapes only featured human performers, whereas Captain Boggs's videotape had barnyard animals as co-stars.  Because there is no causal link between West's violation of the  vessel's rules and his alleged injuries, his claim for maintenance and cure cannot be barred on this basis. *Cf. McCorpen*, 396 F.2d at 549.

Finally, ORCO argues that West's decision to obey Captain Boggs's order was in knowing violation of ORCO's sexual harassment policy.   It thus claims that West's willful misconduct should preclude him from receiving maintenance and cure.  This argument, however, lacks merit because Captain Boggs's order was not per se unlawful.  In fact, ORCO does not even argue that it was illegal to watch the pornographic videotape at issue.  Instead, ORCO argues that West engaged in willful misconduct by complying with an order that he knew was in violation of the vessel's sexual harassment policy.

But Captain Boggs, as the vessel's leader and ORCO's agent, would have had the apparent authority to change or alter the vessel's policies through his orders.  And even if Captain Boggs did not have the actual authority to alter the vessel's sexual harassment policy, West was still expected to follow an order from the captain that was not obviously illegal. *See Roeder v. ALCOA Steamship Co.*, 341 F. Supp. 1236, 1239 (E.D. Pa. 1972) ("The sailor must obey the lawful orders of the Master and of his superior officers, and for willfully disobeying their commands he may be punished.") Accordingly, the fact that West, a deckhand, followed the captain's order to watch the pornographic videotape, even if the order was contrary to the vessel's normal policy, does not come close to constituting willful misconduct that would preclude him from receiving maintenance and cure. *See Warren v. United States*, 340 U.S. 523, 528 (1951) (holding that a seaman is entitled to maintenance and cure unless he engages in "some positively vicious conduct—such as gross

district court's denial of ORCO's motion, but **REVERSE** its grant of judgment for West, and **REMAND** this case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

On August 1, 1997, West boarded the *M/V Dickhoner* to begin work as a deckhand.  Captain Bernard (Pete) Boggs was in charge of the vessel.  Later that month, West was in the pilot house of the *M/V Dickhoner* speaking with Captain Boggs.  During that conversation, Captain Boggs asked West, "Bobby, have you ever seen a man [copulate with] a chicken?"  West replied that he had not.  Captain Boggs then asked West if he had "ever seen a woman screw a pig."  At this point in the conversation, West alleges that he was "floored" by the Captain's line of questioning and wondered why Captain Boggs was asking such questions. West claims that Captain Boggs then ordered him  to retrieve a videotape from the captain's room and watch it in the crew lounge.

Although ORCO characterizes Captain Boggs's statement as a "request," it has not directly challenged West's allegation that Captain Boggs's statement was an order.  Furthermore, ORCO has presented no evidence or testimony that would dispute West's interpretation of Captain Boggs's remarks. West did as he was told, watching the videotape for five to ten minutes.  Suffice it to say that the video—which thankfully was *not* made part of the record on appeal—depicted a man copulating with a chicken and women engaging in sexual activity with dogs and horses.  West claims that he suffered mentally and emotionally as a result of watching this videotape.

West brought suit against ORCO, asserting that (1) ORCO was negligent, (2) the *M/V Dickhoner* was unseaworthy, and (3) he is entitled to maintenance and cure.  After the parties had concluded their discovery, ORCO filed a motion for summary judgment.  The district court granted ORCO's motion on West's claims of negligence and unseaworthiness. It concluded that West could not recover for emotional

damages under those theories of liability because they require a showing that such damages are the result of a physical impact. West conceded that his emotional damages were not caused by a physical impact. The district court denied ORCO's motion with respect to West's maintenance and cure claim, however, and referred the matter to a magistrate judge in order to conduct a hearing regarding the amount of West's damages.

ORCO then filed a motion for clarification, arguing that the district court appeared to be entering judgment for West on his maintenance and cure claim when it only meant to deny ORCO's motion for summary judgment. The district court granted ORCO's motion to clarify and expressly held that it *had intended* to grant judgment for West on his maintenance and cure claim. It did this despite the lack of an evidentiary hearing on liability or any motion by West for summary judgment.

ORCO has filed this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(3), challenging the district court's partial denial of its motion for summary judgment, and arguing in the alternative that West should not have been granted judgment on his maintenance and cure claim. In particular, ORCO argues that the district court's action prevented ORCO from attacking West's credibility and presenting proof that West's mental and emotional problems were causally related to medical conditions not disclosed on West's preemployment application. ORCO also claims that West is barred from recovery because of his violation of the vessel's rules.

## II. ANALYSIS

### A.  Standard of review

We review de novo a district court's grant of summary judgment. See, *e.g.*, *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In deciding a motion for summary

*Transp. Corp.*, 27 F.3d 347, 352 (8th Cir. 1994) (citing *McCorpen* for the same proposition). We find *McCorpen* and its progeny persuasive and will follow it as well.

Because there is a genuine issue of material fact as to whether West's alleged problems were caused by watching the videotape as opposed to his alcoholism or venereal disease, the district court erred in granting judgment for West on the maintenance and cure claim. West's deposition testimony alone is not enough to conclusively establish that the videotape caused his alleged psychological injuries to the exclusion of his other medical conditions. The district court must conduct a trial in order to evaluate the credibility of West's assertion, and both sides should be allowed to present expert witnesses on the issue of causation. If the district court finds a causal link between West's alcohol consumption or venereal disease and his alleged injuries incurred during the voyage, then West will be barred from recovering maintenance and cure because of his material misrepresentations on his preemployment questionnaire. *See McCorpen*, 396 F.2d at 549.

ORCO further argues that it should have been granted judgment on West's maintenance and cure claim because West failed to present any evidence of damages. West, however, testified that watching the pornographic videotape caused him to have an upset stomach, sleepless nights, headaches, and high anxiety. Because of ORCO's interlocutory appeal, no determination has yet been made as to what amount of damages, if any, West may be entitled to as a result of these alleged injuries.

### D.  West's conduct does not preclude him from recovering maintenance and cure

ORCO also claims that because West admits that he brought his own pornographic videotapes onto the *M/V Dickhoner*, conduct which violated the vessel's rules, he should be barred from receiving maintenance and cure. The fact that West may have violated the vessel's rules by bringing his own pornographic videotapes on board is

the duty to provide a seaworthy vessel. Because maintenance and cure is an independent claim that operates like a workers' compensation statute for seamen, however, neither *Gottshall* nor *Szymanski* control this issue.

**C.    Although West's failure to disclose requested medical information does not necessarily prevent him from receiving maintenance and cure, it does preclude him from being granted judgment as a matter of law**

ORCO points out that West did not truthfully answer his preemployment physical examination questionnaire when it asked him to describe his alcohol consumption and whether he had ever contracted a venereal disease. Because of those misrepresentations, ORCO argues that West should be precluded from receiving maintenance and cure. Although West concedes that he did not give a full accounting of his medical history on his employment application, he argues that his less-than-candid responses regarding his history with alcoholism and venereal disease are so distant in time and so unrelated to his present injury that they should not bar recovery.

The seminal case on this issue is *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968). In *McCorpen*, the Fifth Circuit reasoned as follows:

> [W]here the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure. Of course, the defense that a seaman knowingly concealed material medical information will not prevail unless there is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage.

*Id*. at 549 (citations omitted); *accord Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1080-81 (3d Cir. 1995) (citing *McCorpen* for the same proposition); *Wactor v. Spartan*

judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

**B.    West's claim for maintenance and cure is independent of his claims for negligence and unseaworthiness**

ORCO's first argument on appeal is that damages under the doctrine of maintenance and cure cannot exceed those available under the Jones Act and the maritime doctrine of unseaworthiness. In this case, that would mean that West could not recover anything, because the district court granted judgment for ORCO on West's claims of negligence and unseaworthiness. West counters that his maintenance and cure claim is not contingent upon the success or failure of his negligence and unseaworthiness claims.

In deciding this issue, a historical perspective of maintenance and cure is beneficial. This court in *Blainey v. American Steamship Co.*, 990 F.2d 885 (6th Cir. 1993), observed as follows:

> Rather than relying upon the protection of workers' compensation statutes, seamen who suffer illness or injury on the job look to a unique package of remedies. Due to historical tradition and the realization that seaman are required to endure special perils and hardships, federal common law of the sea accords seaman special relief not available to other workers, including maintenance, cure, and unearned wages. Maintenance refers to a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill

while in service of the ship, while cure alludes to the duty
to provide necessary medical care and attention.

*Id*. at 886-87 (citations and internal quotation marks omitted).
This court also noted that "[i]n addition to maintenance, cure,
and unearned wages, a seaman may also seek damages from
the shipowner for negligence under the Jones Act . . . or for a
breach of the duty to provide a seaworthy ship." *Id*. at 887
n.1. "[A] shipowner's ancient duty to pay maintenance, cure,
and unearned wages is imposed by the law itself as an
obligation annexed to the employment; it exists regardless of
any employment contract, including a collective bargaining
agreement." *Id*. at 887; *see also Alrayashi v. Rouge Steel Co.*,
702 F. Supp. 1334, 1338 (E.D. Mich. 1989) ("Maintenance
and cure is a claim independent of a claim under the Jones
Act or a claim of unseaworthiness.").

   In *Stevens v. McGinnis, Inc.*, 82 F.3d 1353 (6th Cir. 1996),
this court observed that "[o]ver the years, the courts have
broadened the duty to pay maintenance and cure. It is now
well-settled that maintenance and cure is payable even though
the shipowner is not at fault, and regardless of whether the
seaman's employment caused the injury or illness." *Id*. at
1357. The *Stevens* court observed that "[a] shipowner must
pay maintenance and cure for any illness or injury which
occurred, was aggravated, or manifested itself while the
seaman was in the ship's service." *Id*. at 1357-58.

   Both *Blainey* and *Stevens* make clear that maintenance and
cure is an independent claim that is not contingent upon being
able to recover for negligence under the Jones Act or a
violation of the duty to provide a seaworthy vessel. To
recover for maintenance and cure, a plaintiff need show only
that (1) he was working as a seaman, (2) he became ill or
injured while in the vessel's service, and (3) he lost wages or
incurred expenditures relating to the treatment of the illness
or injury. *See Freeman v. Thunder Bay Transp. Co.*, 735 F.
Supp. 680, 681 (M.D. La. 1990) (citing Norris, The Law of
Seaman § 26.21, at 53 (4th ed. 1985)). The "right to recover
for maintenance and cure is broad and the burden of proof is

. . . relatively light since recovery is not dependent on the
negligence or fault of the vessel or its owner." *Freeman*, 735
F. Supp. at 681. The Supreme Court has observed "that the
shipowner's liability for maintenance and cure was among the
most pervasive of all and that it was not to be defeated by
restrictive distinctions nor narrowly confined. When there are
ambiguities or doubts, they are resolved in favor of the
seaman." *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962)
(citations and internal quotation marks omitted).

   In the present case, West claims that, while working on the
*M/V Dickhoner*, he was ordered by the captain to watch a
pornographic videotape. West further testified that as a result
of watching this videotape, he suffered emotional problems
and had to undergo mental health counseling. Because
West's deposition testimony makes out a prima facie case for
maintenance and cure, the district court properly denied
ORCO's motion for summary judgment.

   But ORCO argues that the Supreme Court case of
*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994),
and the Sixth Circuit case of *Szymanski v. Columbia Transp.
Co.*, 154 F.3d 591 (6th Cir. 1998), preclude a seaman from
recovering damages for emotional injuries that are not
accompanied by a physical impact. Neither of these cases,
however, address a claim for maintenance and cure. *Gottshall*
is not an admiralty case at all, but rather a claim by two
railroad workers for emotional injuries under the Federal
Employer's Liability Act. The *Gottshall* court adopted the
common law "zone of danger" test to determine whether a
plaintiff may recover damages for mental injuries under the
FELA. Although *Szymanski is* an admiralty case, its holding
is limited to the proposition that a seaman cannot recover for
an emotional injury under the Jones Act or under the general
maritime doctrine of unseaworthiness unless the seaman's
emotional injury was accompanied by a physical impact or if
he was in the "zone of danger" for such an impact. The net
effect of both cases is that a "zone of danger" test should be
used in determining whether a seaman can recover damages
for emotional stress under the Jones Act or for a violation of